UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| WINDSOR VILLAGE<br>CONDOMINIUM OWNER'S<br>ASSOCIATION | CIVIL ACTION |
| VERSUS | |
| BERKSHIRE HATHAWAY GUARD<br>INSURANCE COMPANY, ET AL. | NO. 21-00468-BAJ-SDJ |

### RULING AND ORDER

This insurance dispute seeks recovery for losses allegedly sustained due to Hurricane Delta in October 2020. In sum, Plaintiff Windsor Village Condominium Owner's Association ("Windsor") contends that Delta caused substantial wind damage to the roofing systems on all 20 buildings comprising its condominium complex, which has been only partially compensated under an insurance policy (No. WIBP086199, the "Policy") issued by Defendant AmGUARD Insurance Company ("AmGUARD"). (*See* Doc. 56 at §§ 3-4). The difference between what Windsor demands and what AmGUARD paid approaches $2.7 million. (*Id.*).

This matter will proceed to trial without a jury, at a date to be determined at the May 16, 2023 pretrial conference. (Doc. 69). As set forth in the parties' joint pretrial order, a hotly disputed issue is whether the uncompensated damage Windsor claims was caused by Hurricane Delta or was, in fact, caused by Hurricane Ida, which hit Louisiana nine months after the Policy expired. (*See* Doc. 56 at §§ 2(B)(4), (4)). For obvious reasons, Windsor asserts that all compensable roof damage occurred during Delta, to the tune of $3,561,284.31. (*Id.* at § 3). For equally obvious reasons,

AmGUARD responds that Windsor's estimated repair costs are "exaggerated," that what AmGUARD paid for Windsor's Delta claim—$867,946.66—more than adequately compensated Windsor for the roof damage resulting from that storm, and that Windsor's claim to additional damages is based on Hurricane Ida losses, which are not compensable under the Policy. (*Id.* § 4).

Now, despite this being a bench trial, the parties have submitted multiple motions *in limine*, each seeking to skew the evidence to their respective positions. AmGUARD has filed three *Daubert* motions, demanding that Windsor's proposed experts Barry Runk, James Hartney, and Adrian Eugene be excluded from trial. (Docs. 21, 22, 24). In turn, Windsor has filed a single motion *in limine* seeking to exclude seven categories of evidence, including all "testimony that any damage to the Properties was caused by Hurricane Ida." (Doc. 61 at p. 1). Each motion is opposed.

At the outset, it bears repeating that *Daubert* motions and motions *in limine* are generally a waste of judicial time and resources in a bench trial. Quite simply, the "objectives" motivating such motions—*i.e.*, juror confusion resulting from introduction of unreliable, irrelevant, misleading, or overtly prejudicial evidence—"are no longer implicated" in a bench trial, *Nassri v. Inland Dredging Co.*, 2013 WL 256747, at *1 (M.D. La. Jan. 23, 2013) (Duval, J.) (addressing *Daubert* motions (citing authorities)), because the Court is quite capable of excluding "from its consideration inappropriate evidence of whatever ilk," *Rash v. Lafayette Cnty., Mississippi*, 2022 WL 983645, at *1 (N.D. Miss. Mar. 30, 2022) (Biggers, J.) (addressing motions *in limine* (citing authorities)). "Furthermore, vigorous cross-examination, presentation

of contrary evidence, and careful [attention to] the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Nassri*, 2013 WL 256747, at *1 (quotation marks, citations, and alterations omitted).

With these principles in mind, the Court gives short shrift to the majority of the arguments raised by the parties at this preliminary stage. AmGUARD challenges Windsor's "damage/cost" expert Barry Runk, an architectural engineer and licensed public adjuster, complaining that he was not properly identified in Windsor's Rule 26(a) disclosures, and will provide unreliable damages estimates because he made "no effort to determine the damage caused by Hurricane Delta versus Hurricane Ida." (Doc. 21-1 at p. 9). But AmGUARD's disclosure-related objection is months overdue (not to mention that AmGUARD cannot show prejudice resulting from Windsor's initial inaccurate description of Mr. Runk's anticipated testimony), and whether or not Mr. Runk disaggregated Hurricane Ida losses from his analysis is plainly an issue that goes to the weight of his testimony, and can be ferreted out at trial.

AmGUARD's preliminary challenge to Plaintiff's "causation" expert James Hartney is equally unpersuasive. Here, AmGUARD protests that Mr. Hartney lacks expert qualifications because he is merely an "aerospace engineer," who only turned his attention to the roofing industry in 2016. Apparently, AmGUARD would have the Court ignore the fact that since his career change in 2016, Mr. Hartney has inspected over 690 properties for storm damage and has been designated as an expert regarding hurricane and storm losses 50 times. The Court is not so easily swayed and will assess Mr. Hartney's qualifications for itself at trial. AmGUARD also complains that Mr.

3

Hartney's testimony is unreliable because, like Mr. Runk, he did not inspect the Windsor complex until after Hurricane Ida. (Doc. 22-1 at pp. 2-3, 8-10). Again, the Court will determine what weight to afford Mr. Hartney's testimony based on a full evidentiary record at trial.

Not to be outdone, Windsor advances its own spurious arguments in its motion *in limine*. Of note, Windsor complains that AmGUARD's damages expert Jeffery Button also was not properly identified in AmGUARD's Rule 26(a) disclosures, that AmGUARD should be barred from defending itself based on the Policy's exclusions because it "is contrary to [AmGUARD's] position up until the eve of trial," and that any testimony or evidence related to damages sustained during Hurricane Ida should be excluded. (Doc. 61-1 at p. 5). But, again, Windsor's Rule 26 challenge is untimely and not supported by any showing of prejudice. And the Policy's exclusions are obviously in fair play, given AmGUARD's first affirmative defense—set forth in its October 2021 Answer—stating "Plaintiff's claims are barred, in whole or in part, by … exclusions contained in [the] Policy." (Doc. 7 at p. 1). Finally, it is far too soon to make a judgment regarding the admissibility of evidence related to Hurricane Ida losses, particularly given that Windsor's damages and causation experts—Mr. Runk and Mr. Hartney—admittedly did not inspect Windsor's property before Ida hit.

This leaves only AmGUARD's challenge to Adrian Eugene, Windsor's "retained public adjuster," who was personally involved in the parties' pre-litigation attempts to adjust Windsor's claim. (Doc. 31 at p. 3). "Mr. Eugene was present at [AmGUARD's] January 21, 2021, onsite inspection," and thereafter, on Windsor's behalf, completed

4

his own estimate of Windsor's losses and repair costs. (*Id.* at p. 9). If permitted, Mr. Eugene will offer expert testimony regarding his inspections of Windsor's property, his assessment of Windsor's "structural damage" resulting from Hurricane Delta, "his estimate to repair the property," and "the manner in which [AmGUARD] handled and investigated [Windsor's] claim." (*Id.*).

AmGUARD's objection to Mr. Eugene stands on a different footing: specifically, AmGUARD seeks to bar Mr. Eugene from trial because when he prepared his "estimate" in early 2021, he "was hired on a contingency basis and ha[d] an interest in [Windsor's] claim," in direct violation of Louisiana law. (Doc. 24-1 at p. 1). Sure enough, Louisiana expressly prohibits a public adjustor from entering into a fee contract with an insured that is "contingent upon … the amount of any claim or claims paid to or on behalf of an insured by the insurer." La. R.S. 22:1703. And, sure enough, on October 15, 2020 Mr. Eugene executed precisely such a contract with Windsor. (*See* Doc. 24-2 at p. 7). And, finally, the consensus view—among federal courts, at least—is that expert testimony derived from contingency fee contracts is inherently biased and must be excluded. *E.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31, 2014) (Birotte, J.) ("[T]he majority of courts … have held that testimony of expert witnesses whose compensation is contingent upon the outcome of the case must be excluded." (quotation marks omitted; citing authorities)); *accord Maloney Cinque, L.L.C. v. Pac. Ins. Co.*, 2011-0787 (La. App. 4 Cir. 1/25/12), 89 So. 3d 12, 28, *writ denied*, 2012-0950 (La. 7/2/12), 92 So. 3d 345; *but see PVCA, Inc. v. Pac. W. TD Fund LP*, 2020-0327 (La. App. 4 Cir. 1/20/21), 313 So.

3d 320, 327 (district court did not abuse discretion by permitting public adjuster's testimony despite adjuster's contingency fee contract with insured where the parties converted the contingency fee contract to a flat fee contract one year before insurer's final payments to insured). The reason for this rule is obvious:

> Once the expert obtains a direct financial interest in the outcome of the litigation (whether by his or her status as a party, by contingency fee agreement, or otherwise), any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded. Under those rare circumstances, the conflict of interest is so great, and raises so many serious questions about the integrity of the witnesses' expert testimony, that to admit the conflicted testimony would violate public policy.

*Perfect 10*, 2014 WL 10894452, at *4 (quotation marks and alterations omitted).

Windsor's only response to AmGUARD's challenge is that Mr. Eugene stated repeatedly at his September 2022 deposition that, for this case, he will modify his contract and charge Windsor an hourly rate. (Doc. 31 at p. 5). This argument misses the mark. Even if Mr. Eugene has since revised his original fee agreement, it does not change the fact that when he conducted his onsite inspection and prepared his "estimate" of Windsor's losses (six months before this litigation commenced and nearly two years before his deposition), he was laboring under a contingency fee contract. In other words, when Mr. Eugene performed the work for which he is being offered as an expert, he had an obvious and vested interest in the ultimate outcome of Windsor's claim. This bias cannot be removed by Mr. Eugene's *ex post* adjustment to the terms of his fee. Accordingly, pursuant to its "inherent power to disqualify experts," Mr. Eugene will be prohibited from offering expert testimony in this case. *Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996); *see*

6

*Perfect 10*, 2014 WL 10894452, at *4. Any fact testimony Mr. Eugene may offer regarding his role in the pre-litigation claims process will, of course, be admissible to the extent that it otherwise conforms with the rules of evidence.

In sum, given that this case is a bench trial, the only preliminary ruling the Court need make is that Mr. Eugene will *not* be permitted to offer expert testimony. In all other respects, the parties' motions are denied, without prejudice to the parties' right to renew their arguments at trial (as appropriate), where the Court will make its decision to admit or exclude the challenged evidence based on a fully developed evidentiary record. Accordingly,

**IT IS ORDERED** that AmGUARD's **Motion To Exclude Barry Runk (Doc. 21)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that AmGUARD's **Motion To Exclude James Hartney (Doc. 22)** be and is hereby **DENIED.**

**IT IS FURTHER ORDERED** that AmGUARD's **Motion To Exclude Adrian Eugene (Doc. 24)** be and is hereby **GRANTED IN PART**, and that Mr. Eugene shall be prohibited from offering expert testimony at trial of this matter.

**IT IS FURTHER ORDERED** that Windsor's **Motion *In Limine* (Doc. 61)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 26th day of April, 2023

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**