UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WINDSOR VILLAGE CONDOMINIUM | * | CIVIL ACTION NO: |
| OWNER'S ASSOCIATION | * | 3:21-cv-00468-BAJ-SDJ |
| | * | |
| VERSUS | * | JUDGE BRIAN A. JACKSON |
| | * | |
| BERKSHIRE HATHAWAY GUARD | * | MAGISTRATE JUDGE |
| INSURANCE COMPANY and AMGUARD | * | SCOTT D. JOHNSON |
| INSURANCE COMPANY | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT AMGUARD INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
<u>COMPEL JOEL MOORE'S DOCUMENT PRODUCTION AND DEPOSITION</u>**

Defendant AmGUARD Insurance Company ("AmGUARD") respectfully submits this memorandum in support of its motion to compel Joel Moore (and his companies Champion Insurance Service, LLC and JMG Claims Service) (together, "Moore") to respond fully and completely to AmGUARD's subpoena *duces tecum* and subpoena to testify. The parties have limited time and resources to complete all discovery related to the motion to vacate or confirm the appraisal award (current August 1, 2024 deadline).[1] Despite this deadline and AmGUARD's properly issued subpoena, Moore has refused to make himself available for deposition before the discovery deadline, and he has failed to fully respond to the following requests:

- Please produce documents sufficient to show the amount of money you have been paid by Windsor Village Condominium Owner's Association, Inc... Barcus Arenas, PLLC, McClenny Moseley & Associates, Irwin & Associates National LLC, Irwin & Associates of Louisiana, LLC, Irwin & Associates International, LLC or Luke Irwin for your work on behalf of … [the] community located at 4848 Windsor Village Dr., Baton Rouge, Louisiana 70817. (Request No. 4.)

- Please produce all communications with—or any information sent to or received from—Windsor Village Condominium Owner's Association, Inc. (including but not limited to Bettye LaPlace); Barcus Arenas, PLLC, McClenny Moseley & Associates; Irwin & Associates National, LLC; Irwin & Associates of Louisiana,

---

[1] R. Doc. 86 at 1 ("Deadline for discovery related to motion to vacate/motion to enforce appraisal award: August 1, 2024.")

1

- LLC; Irwin & Associates International, LLC, Luke Irwin; Dan Kessinger; or Meridian Experts related to Windsor Village Condominium Owner's Association, Inc. or the Windsor Village condominium located at 4848 Windsor Village Dr., Baton Rouge, Louisiana 70817 since January 1, 2020. (Request No. 10).

- Produce for inspection and forensic imag[ing] any cell phone you used to communicate in connection with your work on behalf of Windsor Village Condominium Owner's Association, Inc. (Request No. 17).

- Please produce documents sufficient to identify all appraisals—since January 1, 2020—in which you worked with or alongside Irwin & Associates National LLC; Irwin and Associates of Louisiana, LLC, Irwin & Associates International, LLC, or Luke Irwin (Request No. 15).[2]

- Please produce documents sufficient to identify all appraisals—since January 1, 2020—in which you were engaged and in which any of the following attorneys or law firms represented a party to the appraisal: Barcus Arenas, PLLC; McClenny Mosely & Associates; Aaron J. Arenas, or Michael Barcus. (Request No. 16).[3]

Although Moore has produced some documents responsive to AmGUARD's subpoena, he omitted certain materials from his search and he refused to certify the completeness of his search for communications with plaintiff Windsor Village, counsel Barcus Arenas, PLLC, and umpire Joel Moore (Request No. 10).[4] This is especially troubling considering the Louisiana Legislative Auditor has already investigated Moore, and issued a report in February 2024 finding that Moore solicited compensation to which he was not entitled, improperly acted as a public adjuster, and suggested to contractors to use an encrypted messaging application to keep their messages private.[5] As a result, and because AmGUARD also has proof that Moore's production of responsive communications is incomplete, AmGUARD respectfully asks that the Court promptly compel their production as well as any unproduced communications on other applications. Moore has also

---

[2] R. Doc. 89-3 at 12; 89-4 at 12.

[3] *See* Exhibit A, Subpoena to Joel Moore.

[4] R. Docs. 89-3 at 11; 89-4 at 11.

[5] *See* Exhibit B, February 2024 Louisiana Legislative Auditor Report on Grant Parish School Board (AMGUARD 007239-007317), at AMGUARD 007240, 007300-007308.

2

failed to provide a date for his deposition, and therefore AmGUARD moves to compel Moore to sit for a deposition in advance of the discovery deadline, or alternatively, a short extension to complete the deposition.

**BACKGROUND**

Neither the hurricane claims nor the appraisal award in this litigation is as straightforward as Windsor Village suggests. After Hurricane Delta hit Louisiana on October 9, 2020, Windsor Village retained a public adjuster who dictated the scope of this claim, inflated the cost of repairs in a $3.7 million estimate, and overlooked prior repairs and damage to the roofs in the years before Hurricane Delta—all pursuant to a contract with an illegal contingency interest that provided him with a direct financial stake and incentive for inflating his estimates.[6]

Following discovery and motion practice related to Windsor Village's Hurricane Delta claim, and after the passing of Hurricane Ida, the parties agreed to attempt to resolve this dispute via appraisal. Windsor Village selected Luke Irwin to serve as its appraiser, and AmGUARD selected Dan Kessinger; the appraisers then agreed to have Joel Moore serve as the umpire, and the parties executed an Appraisal Agreement and Protocol to dictate the appraisal process.[7] But Windsor Village and its appraiser Luke Irwin followed a similar playbook in appraising the property's Hurricane Ida damage—gamesmanship and an inflated estimate—resulting in a biased, partial, inflated, unsupported and error-ridden $9,511,971.64 appraisal award, that is nearly ***triple*** the amount of Windsor Village's highest estimate in litigation. The appraisal award is a result of multiple violations of the parties' Appraisal Protocol and Agreement by both Mr. Irwin and Mr.

---

[6]   Windsor Village also had retained McClenny Moseley & Associates—a law firm recognized to have engaged in illegal solicitation of clients and improper arrangements with consultants—to first bring this suit after AmGUARD paid $867,946.66 to Windsor Village for its purported Hurricane Delta damages.

[7]   *See* Exhibit C, Appraisal Agreement and Protocol.

3

Moore, which required, *inter alia*, that:

- Mr. Moore and Mr. Irwin be "competent, impartial, and disinterested, and are not [] being compensated, in whole or in part, on a contingency fee or percentage of recovery fee basis,"

- Mr. Irwin "shall meet to attempt in good faith to resolve any disputes or differences and to narrow the disputes and differences that must be addressed in the proceedings before the Umpire,"

- "If the appraisers do not agree on as to the amount of the loss… they will submit the differences about each item as to which they disagree to the Umpire,"

- To submit "differences" to the Umpire, the appraisers must provide documentation to the opposing appraiser "no less than 14 calendar days before presentation to the Umpire" or else "the document cannot be utilized as a supporting document during presentation to the Umpire," and

- The final appraisal award include only "repair costs that are the direct result of direct physical loss or damage directly caused by Hurricane Delta and Hurricane Ida."[8]

Mr. Moore issued a $9,511,971.64 appraisal award in violation of these express terms of the parties' agreement. For one, Mr. Irwin did not attempt to resolve any differences with Mr. Kessinger before submitting materials to Mr. Moore; Mr. Irwin inspected the property in September 2023 and promised to send his estimate to Mr. Kessinger to confer on any agreements, but Mr. Irwin never conferred with Mr. Kessinger. Instead, Mr. Irwin withheld his estimate from Mr. Kessinger for months, and sent it directly to Mr. Moore in January 2024. In other words, Mr. Irwin violated the agreement by failing to meet and confer with Mr. Kessinger in good faith, and by invoking Mr. Moore's role as Umpire by *before there were any disputes on the loss*. What is more, Mr. Moore received, reviewed, and approved Mr. Irwin's appraisal position *before receiving Mr. Kessinger's appraisal position*, and Mr. Moore's initial appraisal award contained $255,603.24 in blatant mathematical errors. After Mr. Kessinger identified those errors, Mr. Moore corrected

---

[8] Exhibit C, at pp. 2-5.

4

them, but nevertheless agreed to adopt the scope of Mr. Irwin's estimate and rendered a $9,511,971.64 award, which eclipses Windsor Village's $3.7 million litigation estimate, and contains numerous repair costs that do not address any loss or damage directly caused by Hurricanes Delta or Ida.

As a result, AmGUARD challenged the appraisal award, and AmGUARD tendered to Windsor Village the amount of undisputed damage (from both Hurricanes Ida and Delta) determined by AmGUARD's own appraiser ($1,036,242.32) within 30 days of AmGUARD's receipt of its appraiser's findings. But due to Mr. Irwin and Mr. Moore's violations of the parties' Appraisal Agreement and Protocol, AmGUARD disputed the final appraisal award and seeks to vacate it.

On May 17, 2024, this Court amended its scheduling order to allow discovery, through August 1, 2024, related to AmGUARD's motion to vacate the appraisal award, to be filed by August 15, and heard on September 16.[9] AmGUARD promptly issued a subpoena to Moore for documents and information related to his work on the appraisal and his relationship with Windsor Village's appraiser, Luke Irwin, and attorneys.[10] The relationship between Irwin and umpire Joel Moore, the compensation Mr. Moore received, the extent of engagements between Moore and Windsor Village's counsel (both McClenny Moseley & Associates and Barcus Arenas), the communications between Irwin and Mr. Moore, and Moore's cell phone data are squarely at the heart of this dispute as the parties seek a ruling on whether Mr. Moore's involvement in this appraisal rendered the $9,511,971.64 award unenforceable based on bias, partiality and compliance with the parties' Appraisal Agreement and Protocol. For instance, Irwin's

---

[9]     R. Doc. 86 at 1.

[10]    Exhibit A.

5

communications with Moore and his cell phone data are relevant to whether they complied with the terms of the Appraisal Agreement and Protocol that require (i) the appraisers to meet and confer before submitting materials to the umpire; and (ii) the appraisers wait 14 days to send materials to the umpire after meeting and conferring. Further, Irwin's prior appraisals with Mr. Moore (and Windsor Village's lawyers) are relevant to whether Mr. Moore possessed any bias sufficient to render the appraisal award unenforceable. Indeed, AmGUARD has already discovered that the Louisiana Legislative Auditor published a report in February 2024 in connection with the Grant Parish School Board's Hurricane Laura claim, finding that Mr. Moore improperly solicited compensation to which he was not entitled, acted as a public adjuster without a license, and recommended the use of an encrypted messaging application with a contractor to keep their communications private, suggesting that Moore engaged in the same activity in this appraisal.

However, Moore refuses to produce the relevant materials requested by AmGUARD. After producing some limited materials on June 28, 2024, AmGUARD requested multiple Rule 37 conferences with Moore's counsel, held a telephonic conference on June 16, 2024, and exchanged e-mail correspondence regarding the sufficiency of Moore's responses. At that telephone conference, and in subsequent e-mail correspondence, Moore made clear he: (i) will not identify prior appraisals with Luke Irwin or Windsor Village's lawyers; (ii) will not commit to producing records of payment by Windsor Village (or its appraiser, or counsel); (iii) failed to produce certain responsive text messages, and (iv) will not agree to sign a declaration regarding the completeness or scope of his search for responsive materials.[11] Facing an August 1, 2024 discovery deadline and Moore's dilatory, evasive and incomplete responses, AmGUARD was forced to file this motion to compel after Moore refused to produce the requested information and failed to provide

---

[11]   Exhibit D, Email Correspondence between counsel for AmGUARD and Moore.

a date for his deposition.

## LAW AND ARGUMENT

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[12] At this stage of litigation, "relevance" under Rule 26 is broadly defined and "lower than the threshold for relevance of admissibility of evidence at the trial stage."[13] "Discovery should be allowed unless the party opposing discovery establishes that the information sought 'can have no possible bearing on the claim or defense of the party seeking discovery.'"[14] Thus, "[i]f relevance is in doubt, the court should be permissive in allowing discovery."[15]

If a party fails to answer proper discovery, Rule 37 provides the requestor a remedy by "mov[ing] for an order compelling an answer, designation, production, or inspection . . . if," as is relevant here, "(iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents . . . as requested under Rule 34."[16] An "evasive or incomplete" answer or production is treated as a failure to answer or produce.[17]

### I. Mr. Moore Should Be Ordered To Produce Documentation That Windsor Village Paid His Fee For The Appraisal (Request 4.)

AmGUARD's subpoena requested that Moore produce evidence of compensation he received from either Windsor Village, its appraiser (Luke Irwin), or its counsel. Moore's

---

[12]  Fed. R. Civ. P. 26(b)(1).

[13]  *Muslow v. Bd. of Supervisors of La. State Univ. & Agricultural & Mech'l Coll.*, 19-11793, 2021 WL 4239102, at *2 (E.D. La. July 22, 2021) (citations omitted).

[14]  *Id.*

[15]  *Id.*

[16]  Fed. R. Civ. P. 37(a)(3)(B).

[17]  Fed. R. Civ. P. 37(a)(4).

compensation is undoubtedly relevant to AmGUARD's challenge to the appraisal award, as the parties' agreed in the Appraisal Agreement and Protocol that Moore would not be compensated on a contingency basis. Although Moore has produced documentation showing he sent an invoice to Windsor Village for their portion of Moore's umpire fee, Moore did not produce any evidence that Windsor Village (or its appraiser or counsel) actually paid the fee. Such evidence of payment is unquestionably relevant to the propriety of the appraisal award and whether Moore is, in fact, being paid on a contingency basis. Further, the limited documents Moore did produce show that he demanded AmGUARD pay his fee before issuance of the award, but Moore did not produce any documents showing he made any similar demands on Windsor Village during the appraisal process, further showing Mr. Moore's bias and partiality. It is therefore critical to determine whether Windsor Village actually paid Mr. Moore's umpire fee before he issued the award, and on what basis that fee was paid.

Moore has not offered any justifiable reason for withholding the requested information related to his receipt of funds, and has indicated only Windsor Village "paid via check."[18] Although Moore has not refused to produce such materials, he has not provided any assurance that the responsive documents will be produced, forcing AmGUARD to seek Court intervention. AmGUARD simply requests that Moore produce a copy of the check or other documentation sufficient to show Moore's receipt of funds for his work on the appraisal from Windsor Village, Luke Irwin, and/or its counsel.

## II.     Mr. Moore Should Be Ordered To Produce All Communications With Luke Irwin (Request 10.)

Mr. Moore's communications with Mr. Irwin are at the heart of AmGUARD's challenge to the appraisal award. The parties agreed to enter appraisal with fair, neutral, unbiased and impartial

---

[18]     Exhibit D, Email Correspondence between counsel for AmGUARD and Moore.

appraisers, as well as an umpire, to determine an accurate determination of Windsor Village's damages under the Appraisal Protocol and Agreement. Under the parties' Appraisal Agreement and Protocol and pursuant to Louisiana law, the appraisers were required "submit their differences along with any supporting documentation to the umpire" only if, and after, the appraisers "fail[ed] to agree" on the amount of loss.[19] But Mr. Irwin and Mr. Moore's communications reveal they violated the parties' Appraisal Agreement and Protocol, leading to an award that was unfair, biased, and inaccurate.

Notwithstanding that Mr. Moore's $9,511,971.64 award eclipses—by multiples—Windsor Village's *highest* litigation estimates ($3.7 million),[20] the disclosed evidence shows that Mr. Irwin submitted his appraisal position to Mr. Moore before conferring with Mr. Kessinger regarding any agreements regarding the scope of the loss. In other words, although the parties Appraisal Agreement and Protocol required the parties' appraisers to "attempt in good faith to resolve any disputes or differences and to narrow the disputes and differences that must be addressed in the proceedings before the Umpire," Mr. Irwin submitted his position to Mr. Moore on the same date that he shared it with Mr. Kessinger, and Mr. Irwin did not wait the 14-day delay period required under the Appraisal Agreement and Protocol for his position to be considered by Mr. Moore. Further, Mr. Moore received Mr. Irwin's appraisal position and accepted it within hours *before ever receiving Mr. Kessinger's position*. In fact, Mr. Moore accepted Mr. Irwin's appraisal position 8 days *before* Mr. Kessinger completed his appraisal position—demonstrating a

---

[19] *See* Exhibit A.

[20] Windsor Village submitted an estimate for its claimed Hurricane Delta Damage (prepared by a public adjuster with an illegal contingency interest in the claim) that totaled $3,738,841.64, and Windsor Village submitted an estimate for its claimed Hurricane Ida damage that amounted to $3,387,067.42.

9

violation of the parties' Appraisal Agreement and Protocol, as well as Mr. Moore's clear bias toward Mr. Irwin's position.[21]

As a result, it is essential to determine the totality of documents and information that was exchanged between Mr. Irwin (as well as Windsor Village and its counsel) and Mr. Moore, and when those communications occurred, for this Court to properly evaluate Mr. Moore's bias and partiality, and ultimately, the propriety of the award under the parties' Appraisal Agreement and Protocol. Given the vast discrepancy between Windsor Village's highest estimate in litigation ($3.7 million) and Mr. Irwin's estimate ($9.5 million), as well as the timing of Mr. Moore's acceptance of Mr. Irwin's estimate (before receiving Mr. Kessinger's position), there are strong grounds for discovering the full extent of their communications, and their impact on the ultimate appraisal award subject to AmGUARD's challenge. Indeed, the communications between Mr. Moore and Mr. Irwin are the most obvious, direct and least burdensome mechanism to evaluate the propriety of the appraisal award.

Although Mr. Moore produced some e-mail communications and a single text message with Mr. Irwin, he did not produce any messages sent via other applications, such as Signal or WhatsApp, and he refused to certify the completeness of his search for these communications. Such additional communications undoubtedly exist, as Mr. Irwin has produced some text messages that Mr. Moore did not produce (and Mr. Irwin has likewise refused to certify the completeness of his search and has not produced any messages on other applications).[22] At minimum, Mr. Moore

---

[21]  Mr. Moore's bias is also reflected in his acceptance of Mr. Irwin's inaccurate position and the $9,511,971.64 award, which is riddled with inexplicable clerical errors, including inaccurate quantities/measurements, incorrect application of building codes, upgrades to the properties that did not exist prior to the storms and that are not required by building codes, and inaccurate and/or manipulated pricing.

[22]  *See* Exhibit E, Text Messages between Mr. Irwin and Mr. Moore.

should be ordered to produce these additional text messages that unquestionably fall under the scope of the subpoena, as well as any other unproduced messages with Mr. Irwin.

Additionally, Mr. Moore should be ordered to produce any additional communications in his possession, and certify the completeness of his search for responsive materials. Indeed, there are strong grounds to believe that Mr. Moore used other messaging applications to communicate on his projects, but Mr. Moore did not produce (or search for) responsive communications used on such applications. For example, the Louisiana Legislative Auditor issued findings in February 2024 related to Mr. Moore's role in acting without an appropriate license and improperly soliciting compensation in connection with his work on the Grant Parish School Board's Hurricane Laura insurance claim.[23] In its findings, the Legislative Auditor uncovered that Mr. Moore suggested to a contractor to use an encrypted messaging application (Signal) in order for them to communicate regarding negotiations of Mr. Moore's fee—to which he was not legally entitled—because of concerns over the "privacy of their messages."[24] As a result, Mr. Moore should be ordered to search, and produce, any communications on Signal (or any other messaging application) between he and Mr. Irwin, Windsor Village, and its counsel.

Furthermore, Mr. Irwin's time sheets and $655,992.70 invoice indicate that he mailed hard copy materials to Mr. Moore—including a thumb drive[25]—but Mr. Moore's production did not

---

[23]  *See* Exhibit B, February 2024 Louisiana Legislative Auditor Report on Grant Parish School Board (AMGUARD 007239-007317), at AMGUARD 007240, 007300-007308. The Legislative Auditor also found numerous other issues with the Grant Parish School Board Hurricane Laura claim with its insurer (and Mr. Moore's involvement in those complaints), including (i) contractors overbilling for services; (ii) contractors performing work outside the scope of their contracts; (iii) contractors billing for unnecessary work or work that was never performed; (iv) contractors preparing false quotes; and (v) conflicts of interest.

[24]  *See* Exhibit B, at AMGUARD 007306.

[25]  *See* Exhibit F, Luke Irwin Timesheets, at p. 8 (February 1, 2024 entry).

11

include any such hard copy communications.  Mr. Moore should be ordered to produce those communications as well as the thumb drive that he was sent by Mr. Irwin.

### III. Mr. Moore Should Be Ordered To Produce His Phone For Forensic Imaging (Request 17).

Given the discrepancies in the productions between Mr. Moore and Mr. Irwin, Mr. Moore's failure to produce responsive text messages, and both Mr. Irwin and Mr. Moore's refusal to certify the completeness of their searches and productions, Mr. Moore should be ordered to produce his phone for forensic imaging to confirm with certainty the extent of communications between he and Mr. Irwin.  AmGUARD's subpoena included a request to image Mr. Moore's cellular phone, as well as a request for his communications with Mr. Irwin, out of an abundance of caution and in the event Mr. Moore's document production was not complete.  Because Mr. Moore's production remains incomplete and he will not certify the extent of his efforts to search for and produce responsive communications, he should be ordered to produce his cell phone for forensic imaging to ensure all such materials are produced.

Forensic examinations of computers and other devices are not "uncommon in the course of civil discovery," and courts are "cautious in requiring the mirror imaging of computers" only when the request is "extremely broad" and the "connection between the computers and the claims are unduly vague or unsubstantiated in nature." *NOLA Spice Design, LLC v. Haydel Enterprises, Inc.*, 2013 WL 3974535, at *2 (E.D. La. Aug. 2, 2013) (citing *John B. v. M.D. Goetz, Jr.,*, 531 F.3d 448, 459-60 (6th Cir. 2008)).  But here, AmGUARD's request is limited—seeking to image Mr. Moore's phone to collect his communications with Mr. Irwin, Windsor Village, and its counsel— and the request for materials is not "vague or unsubstantiated," because they are directly relevant to the heart of AmGUARD's challenge of Mr. Moore's appraisal award.

What is more courts have permitted forensic examinations when "the moving party has demonstrated that its opponent has defaulted in its discovery obligations by unwillingness or failure to produce relevant information by more conventional means." *NOLA Spice Design*, 2013 WL 3974535, at *2 (citing *White v. Graceland College Center etc.*, 2009 WL 722056, at *7 n. 17 (D. Kan. Mar. 18, 2009). These are the precise circumstances here that warrant a forensic examination of Mr. Moore's communications with Mr. Irwin: Mr. Moore defaulted on his own discovery obligations by failing to produce text messages with Mr. Irwin (at minimum), and has refused to certify the completeness of his responses or provide the materials by other means. This is especially problematic given the possible existence of encrypted messages on Signal (or some other application) between Mr. Moore and Mr. Irwin that warrant forensic imaging.

In *NOLA Spice Design*, for example, the court refused to allow forensic examination of computers because the defendant *verified* that it produced all responsive materials (in both verified discovery responses and in sworn testimony) and the defendant had not defaulted on any discovery obligations that would warrant a forensic examination. *See* 2013 WL 3974535, at *3. But here, Mr. Moore has defaulted on his discovery obligations (failing to produce at least text messages) and he will not verify the completeness of his search and production—and therefore under *NOLA Spice Design*, Mr. Moore should be ordered to produce his phone for a forensic examination to ensure that all responsive, relevant communications are produced.

**IV.      Mr. Moore Should Be Compelled To Identify Prior Appraisals With Luke Irwin and/or Windsor Village's Counsel (Requests 15 and 16).**

The neutrality and potential bias held by Mr. Moore and Mr. Irwin in Windsor Village's favor is squarely at issue in AmGUARD's challenge of the appraisal award. Under the parties' Appraisal Agreement and Protocol, Mr. Irwin and Mr. Moore agreed to serve competently and impartially, but the size of Mr. Moore's award (nearly triple the amount of Windsor Village's

13

highest estimate in litigation) and the timing of his acceptance of Mr. Irwin's inflated estimate (before receiving Mr. Kessinger's position) demonstrate Mr. Moore's deference to Mr. Irwin, Windsor Village and/or its counsel. This is especially true given the inaccurate quantities and prices in Mr. Moore's award, as well as his inclusion of numerous line items to repair portions of the property that did not suffer any storm damage.

As a result, and to test Mr. Moore's bias, AmGUARD requested that Mr. Moore identify all prior appraisals in which he served as an umpire with Luke Irwin as an appraiser. Although Mr. Moore complained that responding to this request was too burdensome, AmGUARD offered to limit its request for Mr. Moore to identify only (i) the name of the prior appraisal; and (ii) size of the award. But Mr. Moore nevertheless refused to provide this simple, readily available information—which does not require him to search for or produce voluminous materials. Indeed, Mr. Moore's refusal to identify other appraisals with Mr. Irwin on the basis of burden reveals that such other appraisals exist, and the volume of such appraisals is direct evidence of bias—it is not grounds to withhold the critical information that this Court should consider in deciding whether Mr. Moore's award was the result of an impartial process. Mr. Moore should be ordered to identify all prior appraisals since January 1, 2020 in which he served as an umpire with Mr. Irwin as an appraiser, and in which Windsor Village's counsel represented one of those parties. Such direct evidence of bias is relevant and proportional to the needs of this multi-million dollar insurance dispute.

### V.     **Mr. Moore Should Be Compelled To Sit For A Deposition.**

AmGUARD also issued a subpoena for Mr. Moore's deposition testimony in compliance with Federal Rule of Civil Procedure 45, and after his counsel refused to present him voluntarily, AmGUARD personally served Mr. Moore with a subpoena for his deposition on July 19. After

service, Mr. Moore refused to appear for the noticed July 19 date and his counsel represented they would provide alternative dates that Mr. Moore would be available. However, despite multiple Rule 37 attempts—both by phone and e-mail—counsel for Mr. Moore has not yet provided a date for his deposition.

Mr. Moore has not raised any valid objection to his deposition and none exist—he is a critical witness to the propriety of his appraisal award, and AmGUARD is entitled to depose him under Rule 34. Mr. Moore should be compelled to make himself available for deposition, and due to the impending August 1 discovery deadline related to the appraisal award, AmGUARD requests that Mr. Moore be presented before the deadline, or alternatively, that the deadline be extended to allow for Mr. Moore's deposition. Despite Mr. Moore's assurances that a date will be forthcoming, the parties' discovery deadline is imminent and Mr. Moore has not provided a date and AmGUARD cannot wait any longer. AmGUARD diligently requested Mr. Moore's deposition on June 26 and timely served a subpoena on Mr. Moore for a July 19 deposition (after his counsel refused to accept service), and AmGUARD should not be prejudiced in challenging the appraisal award due to Mr. Moore's obstructionist tactics and refusal to respond to AmGUARD's appropriate requests.

## CONCLUSION

Moore has failed to adequately respond to discovery about a fundamental issue in this case: the validity of the appraisal. Without this information, AmGUARD is unfairly prejudiced in its defense. Given the looming August 1, 2024 deadline in this case, the Court should grant this motion and compel Moore to comply with Rule 45 of the Federal Rules of Civil Procedure by supplementing the document production and presenting Moore for deposition.

        Respectfully submitted,

        <u>/s/ Laurence ("Lon") D. LeSueur, Jr.</u>
        John W. Joyce, 27525
        Laurence D. LeSueur, Jr., 35206, T.A.
        Lance W. Waters, 37351
        BARRASSO USDIN KUPPERMAN
         FREEMAN & SARVER, L.L.C.
        909 Poydras Street, Suite 2350
        New Orleans, Louisiana 70112
        Telephone: 504/589-9700
        Facsimile: 504/589-9701
        jjoyce@barrassousdin.com
        llesueur@barrassousdin.com
        <u>lwaters@barrassousdin.com</u>

        *Attorneys for AmGUARD Insurance Company*