UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **WINDSOR VILLAGE CONDOMINIUM OWNER'S ASSOCIATION** * | **CIVIL ACTION NO.: 3:21-cv- 00468** |
| * | |
| **VERSUS** * | |
| * | **JUDGE BRIAN A. JACKSON** |
| **BERKSHIRE HATHAWAY GUARD INSURANCE COMPANY AND** * | **MAGISTRATE JUDGE** |
| **AMGUARD INSURANCE COMPANY** * | **SCOTT D. JOHNSON** |

### JOEL MOORE'S SUR-REPLY MEMORANDUM IN OPPOSITION TO AMGUARD'S MOTION TO COMPEL

**MAY IT PLEASE THE COURT:**

Non-Party, Joel Moore, respectfully submits this Sur-Reply Memorandum in Support of his Opposition to AmGUARD's Motion to Compel Joel Moore's Document Production (**R. Doc. 95**), as follows:

AmGUARD attempts to portray that Mr. Moore only supplemented his responses to the May 17, 2024 subpoena, provided a declaration and deposition dates because a motion to compel was filed.[1] This is untrue. As Mr. Moore's Opposition explains, there were representations made by AmGUARD as to the discovery cutoff deadline and more importantly, there was no deadline discussed for Mr. Moore to provide his agreed supplemental response on the outstanding inquiries after the July 16, 2024 discovery conference.[2] AmGUARD then sought to ambush Mr. Moore by imposing a deadline to supplement with a one day turnaround while undersigned counsel was out of state on vacation, despite Mr. Moore's assurances he would cooperate, provide deposition availability and additional responsive documents should they be identified – which he did.[3] In his

---

[1]  **R. Doc. 109-2**, **pp. 1, 3,** and **7.**
[2]  **R. Doc. 104, pp. 4-6** at **B.**
[3]  **R. Docs. 95-6, 104-3** and **104-5.**

1

July 30, 2024 correspondence, Mr. Moore requested written confirmation from AmGUARD that it would remove the issues he addressed via his supplemental production from its motion to compel.[4] AmGUARD ignored this request and Mr. Moore was forced to oppose the entirety of the subject motion when AmGUARD could have easily modified the scope prior to its filing on August 28, 2024. Further, AmGUARD's repeated attacks on Mr. Moore's character by claiming his recalcitrance, obstinance and bias prompted this discovery dispute should not go unnoticed as these claims are false and unnecessary to obtain a resolution of the underlying discovery dispute, not to mention, defamatory.

AmGUARD's Reply memorandum incorrectly represents that Mr. Moore filed two briefs in two federal districts to oppose only a May 17, 2024 subpoena.[5] AmGUARD omits that it served Mr. Moore with a second subpoena on August 9, 2024.[6] This August 9 subpoena – that broadened the scope of requests originally presented in the May 17, 2024 subpoena – sought compliance in Houston, Texas, and is the subject of Mr. Moore's Motion to Quash. It is unclear if AmGUARD is familiar with Fed. R. Civ. P. 45(d)(3) or 37(a)(2); however, the law requires a Motion to Quash the August 9 subpoena to be filed in Texas since the subpoena sought compliance in Houston, Texas.[7] *See, Advantage Roofing & Construction of Louisiana, Inc. v. Landmark American*

---

[4] **R. Doc. 104-3, pp. 2-3**.
[5] **R. Doc. 109-2, p. 2**.
[6] *See* **R. Doc. 109-5, p. 1** at ¶1 which states "[…] Moore filed a motion to quash a subpoena issued by AmGuard Insurance Company on **August 5, 2024**…" This subpoena was subsequently served on Mr. Moore on August 9, 2024.
[7] Along with Mr. Moore's Motion to Quash, Mr. Moore also filed a Motion to Transfer the Motion to Quash to the Middle District of Louisiana, as Rule 45 allows for such transfer upon the consent of the parties. Mr. Moore, in an effort directed toward efficiency and judicial economy, essentially did AmGUARD a favor by requesting the transfer so as to avoid requiring AmGUARD to litigate in two venues. And, at the August 21, 2024 deposition of Mr. Moore, undersigned counsel sought and obtained AmGUARD's consent to transfer the venue to this Court, citing to the convenience of the parties as the basis for the transfer. Irrespective of AmGUARD's arguments in its reply memorandum, the law required Mr. Moore to file in Texas, but his willingness to proactively move that motion to this Court is yet another sign of his desire to cooperate with AmGUARD. *In Re Subpoena Directed to Non-Party Joel Moore*, No. 4:24-mc-01329, U.S.D.C. for the Southern District of Texas, Houston Division.

*Insurance Company* No. CV 16-677, 2017 WL 9285523 (M.D. La. Sept. 26, 2017)(denying a motion to compel filed in the Middle District of Louisiana where the non-party subpoena at issue sought compliance in Texarkana, Texas).

### A.   AMGUARD DID NOT PROPERLY SERVE MR. MOORE OR PROVIDE PROPER NOTICE TO MR. MOORE OF ITS MOTION TO COMPEL.

AmGUARD also claims the subject Motion to Compel was properly served and personal service is not required. At a minimum, notice is required. Here, AmGUARD failed to show Mr. Moore properly received notice under Rule 45. AmGUARD cites a District of Columbia case, *Freeman v. Giuliani*, No. 21-3354, 2023 WL 4750552, (D.D.C. July 13, 2023), in support of its position that personal service is not required but does not address the notice requirement. Again, AmGUARD omits information detrimental to its case and makes conclusory assertions. *Freeman* opined courts have found that the **notice requirement of Rule 45 is satisfied by mailing a copy of the motion to the party** (emphasis added).[8] Mr. Moore's counsel was not asked and did not agree to accept service of the motion to compel.[9] Thus, at a minimum, mailing the motion to Mr. Moore (not emailing to undersigned counsel) was required and the Court should have been notified of the method of service.[10]

This Honorable Court, in *Capps v. Lott*, No. 21-487-BAJ-SDJ, 2022 WL 907159, at *1 (M.D. La. Mar. 28, 2022), held a court may not order compliance with a subpoena under Rule 45 unless the subpoenaed party **and** the parties to the action have first been provided notice of the motion to compel. AmGUARD argues that the motion to compel was not required to be served by

---

[8]   *Freeman v. Giuliani*, No. 21-3354, 2023 WL 4750552, *8 (D.D.C. July 13, 2023) (quotations omitted).
[9]   AmGUARD only inquired about acceptance of service of the subpoena, not the motion.
[10]  *McMillan v. J.P. Morgan Chase Bank, N.A.*, No. 15-500, 2017 WL 373446, at *1 (M.D. La. Jan. 25, 2017) (noting that Chase filed an Affidavit indicating that a copy of the Motion to Compel and accompanying memorandum and exhibits were served on a representative of the non-party).

3

means other than ECF.[11] That is woefully incorrect as only the parties receive ECF notice of the motion. The one thing the parties do agree on is the fact that Mr. Moore is a non-party to this litigation. Prior to August 14, 2024, Mr. Moore did not and could not receive any notice of any filings in this litigation via ECF as he made no filings herein. Accordingly, denial of AmGUARD's motion to compel would be proper.[12]

**B.   AMGUARD DID NOT ISSUE A SUBPOENA TO CHAMPION INSURANCE SERVICES, LLC, AND ONLY ISSUED A SUBPOENA TO JOEL MOORE.**

Mr. Moore is unaware of any subpoena issued by AmGUARD directed to Champion Insurance Services, LLC. While AmGUARD provides proof of service on Champion's registered agent, the underlying subpoena was not provided as an exhibit to AmGUARD's Reply memorandum, and indeed Mr. Moore believes no such second subpoena to Champion exists. The May 17, 2024 subpoena at issue herein was issued to Joel Moore, individually, and Joel Moore only.[13] Champion Insurance Services, LLC was referenced only once in the May 17, 2024 subpoena, as one small part of one of the twenty one document requests therein.[14] To date, AmGUARD has not raised any issues with Champion, a separate and distinct juridical entity, failing to respond to a subpoena issued to it.  At best for AmGUARD, it improperly served Champion with a subpoena actually issued to Mr. Moore.  Mr. Moore fully and cooperatively complied with that subpoena, despite yet another procedural mis-step by AmGUARD.

---

[11] **R. Doc. 109-2, p. 2**.

[12] Mr. Moore reiterates his position from his opposition (**R. Doc**. **104**) that he was compelled to oppose the instant motion, out an abundance of caution and without waiving the issue of service, in light of the posture of the case, and the failure of AmGUARD to properly comply with Local Rule 5 on the service issue. At the time Mr. Moore's opposition was filed, AmGUARD's motion had already been set for hearing.  That, combined with AmGUARD's failure to advise the Court of the means of service on Mr. Moore (of which there was none), caused Mr. Moore to file his opposition rather than run the risk of the Court not being fully informed or an adverse ruling granting the instant motion.

[13] **R. Doc. 95-3, pp. 1, 3, and 6**.

[14] *Id.* at p. 8, Topic 5.

## C. AMGUARD IS NOT ENTITLED TO RECORDS RELATED TO PRIOR APPRAISALS INVOLVING MR. MOORE AND MR. IRWIN.

At the outset, Mr. Moore avers he has not challenged or disputed the fact that other appraisals exist where he served as an umpire and Mr. Irwin as an appraiser. Mr. Moore's position has always been and still is that other appraisals involving other carriers, other insureds, and other awards are irrelevant to this appraisal, among other valid and yet to be disputed objections. AmGUARD tries to claim it is such a simple task to give appraisal awards – it is not. Mr. Moore would be required to review emails for numerous files, determine their current posture, and require he devote additional time to this already protracted matter.[15] AmGUARD claims this information is proportional to a dispute over the enforceability of a $9.5 million appraisal award, yet this assertion rings hollow.[16] AmGUARD also cannot just simply exclaim 'bias' of Mr. Moore, without providing a scintilla of evidence, rely on self-serving interpretations of testimony, and expect to be permitted unfettered and carte blanche access to any information it believes is relevant, no matter how intrusive to a non-party.

In fact, AmGUARD's allegations pertaining to Mr. Moore's alleged bias are contradictory. On one hand AmGUARD asserts, "[t]his inflated appraisal award is the result of a pattern of behavior that **strongly suggests bias** on the part of Mr. Moore in Mr. Irwin's favor…"[17] AmGUARD later posits "there is **concrete evidence** in this appraisal that demonstrates Mr.

---

[15] **R. Doc. 109-7**, **pp. 9, 57** - J. Moore Depo. at pp. 21:17-19; 222:16-223:10-18

[16] In the instant matter, the actual contractual amount in dispute is closer to $5.05 million – not $9.5 million – because, upon information and belief, AmGUARD has paid approximately $1.836 million of the awarded damages, two deductibles of 1% for Delta ($160,905.27) and 2% for Ida ($350,242.96) further reducing the awarded structure damages (other deductibles may also apply). Additionally, $2.111 million of the award is a prospective ordinance and law calculation which is capped by the policy at $10,000 per building and may never be incurred or owed (particularly since AmGUARD obtained evidence indicating the responsible governmental entity may determine it is not required to be incurred).

[17] **R. Doc. 109-2, p. 5**.

5

Moore's obvious partiality toward Mr. Irwin."[18]  Unsurprisingly, AmGUARD again provides no concrete evidence. If this concrete evidence exists, it is unclear why AmGUARD seeks to enforce multiple burdensome and harassing document requests on both Mr. Moore and Mr. Irwin and why has it not once presented this evidence.

AmGUARD's reply also refers to excerpts of Mr. Moore's deposition testimony that it claims suggests bias.[19] The facts of the matter actually are as follows:

> ➢ AmGUARD's argument on how Mr. Moore's award was created ignores other pertinent testimony. Mr. Moore testified he primarily worked off the PDF versions of the estimates of Mr. Kessinger and Mr. Irwin, (and not their Xactimate files that have audit features – the very same audit features that AmGUARD relies upon solely to claim Mr. Moore did not adequately review the information) in preparing his award.[20] AmGUARD desperately avoids the fact that its very own appraiser, Mr. Kessinger, did not provide his initial cost estimates [not his full position] until March 11, 2024.  Next, Mr. Moore's testimony cited by AmGUARD in footnote 24 is not an accurate representation. The line of questioning and responses clearly show the files discussed were submitted by *Luke Irwin* to both Mr. Moore and Mr. Kessinger in a February 26 email.[21]

> ➢ Mr. Moore testified that it is common for him to request payment before the issuance of an award as an umpire.[22] Mr. Moore further explained that it was not considered a demand for payment but more of a requirement because of retaliation where an umpire may not receive payment due to a disagreement with the award.[23] Mr. Moore even elaborated on a time where he did not receive a payment.[24] As for his request for payment in the instant case, Mr. Moore testified he simply forgot about the unique language in an agreement signed in August 2023 when he requested his fee in February 2024.[25] That does not establish bias.

> ➢ AmGUARD claims Mr. Moore's refusal to consider Dan Kessinger's position until receipt of payment left him with four days to issue an award. It was Dan Kessinger's delay and requests for extensions that constrained the timeframe for Mr. Moore's issuance of an award. As evidenced in the chronology of events, the deadline for Dan Kessinger to provide his position had been extended multiple times.[26]  Had the parties to this dispute, or their appraisers, wanted additional time, for themselves or their umpire, it was incumbent upon them – not Mr. Moore – to seek relief from the Court.  Here, AmGUARD effectively claims

---

[18] **R. Doc. 109-2** at p. 6.
[19] *Id.*
[20] **R. Doc. 109-7, p. 35** - J. Moore Depo. at p. 136:7-137:8; 166:1-4
[21] **R. Doc. 109-7, p. 44** - J. Moore Depo. at p. 171:6-22.
[22] **R. Doc. 109-7**, **p. 31** - J. Moore Depo. at p. 118:19-21
[23] *Id.* - J. Moore Depo. at p. 119:19-21
[24] *Id.* at p. 54, J. Moore Depo. at p. 213:15-24.
[25] *Id.* at p. 55 - J. Moore Depo. at p. 217:11-18
[26] *See* **R. Doc. 96-3 at pp. 2-5.**

6

bias because its own appraiser was derelict and submitted his position to Mr. Moore at the 11th hour.[27] Notwithstanding, Mr. Moore worked diligently to review the entirety of the materials submitted and render the award.[28] Rather than attempt to crucify Mr. Moore, AmGUARD should thank him for working under extremely tight timelines to solve a problem not of his making. What is omitted from the analysis is the more than seven months AmGUARD's appraiser had to prepare and deliver his position to Mr. Irwin and attempt to reconcile their differences.

- ➢ Despite already tendering payment, AmGUARD is only now contesting Mr. Moore's methodology for establishing his fee. Mr. Moore, based on his experience and knowledge, was of the opinion that based on what he reviewed he was able to determine a fee as he was aware Mr. Irwin's estimate was on the higher end. He then utilized his fee schedule to arrive at the fee for the case, and that's what he charged. Had AmGUARD (or Windsor Village) desired to dispute the fee, they certainly could have done so. But to pay the fee and raise it as an issue six months later, solely to claim bias on the part of Mr. Moore, is unconscionable.

In short, the above scenarios do not support a finding of bias nor the production of unrelated appraisal awards. These prior appraisals are irrelevant to the dispute between Windsor and AmGUARD. AmGUARD is trying its hardest to avoid payment of the appraisal award. Moreover, Mr. Moore's inability to recall appraisal awards with confidentiality agreements in place does not automatically equate to their nonexistence. There are valid privacy concerns and AmGUARD is not entitled to such information.

### D. MR. MOORE CANNOT BE COMPELLED TO PRODUCE THUMB DRIVES HE DOES NOT HAVE.

AmGUARD continues to paint this false narrative that Mr. Moore refuses to commit to searching for two specific thumb drives. This is demonstrably false as Mr. Moore's unequivocal testimony shows he did not receive the first thumb drive sent to him by Mr. Irwin.[29] While AmGUARD attempts to cloud Mr. Moore's testimony on this issue by claiming there is

---

[27] Though AmGUARD attempts to place blame for timing on Mr. Irwin, that has nothing to do with Mr. Moore. Again, either Windsor Village or AmGUARD could have petitioned the Court for additional time. They did not, and Mr. Moore was forced to perform under very compressed circumstances to complete his assigned task.
[28] **R. Doc. 109-7, p. 35** - J. Moore Depo. at pp.135:22-136:3.
[29] **R. Doc. 109-7, p. 25** - J. Moore Depo. at p. 96:14-97:6.

"conflicting" testimony regarding the transmission of Mr. Irwin's appraisal position, there is only one person involved in this dispute that can testify as to what Mr. Moore received in the mail – and that is Mr. Moore. He did not receive the first thumb drive. As to the second thumb drive, which Mr. Moore did receive, he testified that he did not believe he still possessed that thumb drive from Mr. Irwin, that he erased the thumb drive, and used it for an entirely unrelated purpose; thus, he is unable to provide AmGUARD with items he does not possess.[30] AmGUARD is looking for an escape route to justify its refusal to pay the appraisal award. It is unfair that non-parties are subject to AmGUARD's unscrupulous tactics as part of that process.

## CONCLUSION

For the foregoing reasons and those set forth in Joel Moore's Opposition (R. Doc. 104), AmGUARD's Motion to Compel should be denied. AmGUARD should also be assessed with all costs and attorneys fees incurred by Moore in responding to this motion.

Respectfully submitted:

**ADAMS AND REESE LLP**

*/s/ William D. Shea*
WILLIAM D. SHEA (#29419) – T.A.
TAYLOR M. LEDUFF (#39253)
450 Laurel Street, Suite 1900
Baton Rouge, Louisiana 70801
Telephone: (225) 378-3244
Facsimile: (225) 336-5220
Email: william.shea@arlaw.com
Email: taylor.leduff@arlaw.com
***Counsel for Joel Moore***

---

[30] **R. Doc. 109-7, p. 4** - J. Moore Depo. at p. 13:4-15; **R. Doc. 109-6, p. 1**.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system on August 30, 2024. Notice of this filing will be sent to all counsel of record via the Court's electronic filing system.

                                            */s/ William D. Shea*
                                            William D. Shea