UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WINDSOR VILLAGE CONDOMINIUM OWNER'S ASSOCIATION**<br>*Plaintiff*<br><br>v.<br><br>**AMGUARD INSURANCE COMPANY**<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:21-cv-00468<br><br><br>JUDGE BRIAN A. JACKSON<br><br><br>MAG. JUDGE SCOTT D. JOHNSON |

**PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION TO ENFORCE**

NOW INTO COURT, comes Plaintiff, Windsor Village Condominium Owner's Association ("Windsor Village"), who files this Reply to in Support of Plaintiff's Motion to Enforce the Appraisal Award, and would respectfully show:

**I.   AmGuard Fails to Show How Mr. Irwin or Mr. Moore Violated the Appraisal Agreement and Protocol**

**A.   Documents Were Exchanged in Compliance with the Protocol**

It is important to recognize that AmGUARD has made a false statement in its Opposition to Plaintiff's Motion to Enforce, claiming "AmGUARD never agreed to waive the 14-day requirement that Mr. Irwin had already breached." AmGuard misrepresents the Parties' clear intent to modify the protocol to allow the umpire to consider any information. On March 12, 2024, counsel for WVCOA confirmed that the email chain was sufficient to modify the Appraisal Agreement and Protocol such that all information submitted by the appraisers could be considered by the umpire, irrespective of the 14-day period described in the Appraisal Agreement and

Protocol.[1] Counsel for AmGUARD responded the same day stating **"I'm in agreement with [Counsel for WVCOA] – both appraisers have their submissions in at this point and both parties want them to be considered by the umpire to make a decision before our status conference."**[2]

### B. The Timing of Mr. Moore's Involvement was Welcomed by AmGUARD

The protocol states that if the appraisers did not agree on the amount of the loss within 90 days of their appointment, and neither side requested an extension of time, all disputes and differences would be submitted to the umpire.[3] Within 90 days of their appointment, the appraisers had not agreed on the amount of the loss, neither side requested an extension, thus, the umpire was engaged.

Defendant wrongly claims that extensions were agreed to, as evidenced by the motions to extend the stay. But that is not comparing apples to apples. Defendant cannot point to a single piece of evidence that either of the appraisers "notified the parties" for the purposes of extending this deadline. The Parties to this litigation sought to extend the say to complete the appraisal process, as evidenced by the emails Defendant omitted from its motion to vacate.

Defendant made no objection at all to this process during the time the appraisal was ongoing. The first email that included Mr. Moore in the discussion was on January 29, 2024.[4] By that time, AmGUARD's lawyer had already asked nearly two months earlier whether Mr. Kessinger would be able to finish the appraisal process entirely by the end of January.[5] AmGUARD and its attorneys knew that the umpire was invoked and involved and neither

---

[1] *Exhibit 35*, Emails dated February 29, 2024, through March 12, 2024.
[2] *Id*.
[3] *Exhibit 18*, at P. 4.
[4] *Exhibit 20*, Appraisal Panel Emails at Kessinger 009063 – 009064.
[5] *Exhibit 38*, December 6, 2023, email re Motion to Continue Stay.

AmGUARD nor Mr. Kessinger ever raised a peep, because they knew it was proper under the protocol.

### C. Mr. Irwin and Mr. Kessinger Met in Good Faith to Narrow the Differences

Ultimately, AmGUARD asks this Court to just pretend the joint inspection, and the testimony about the joint inspection doesn't exist. The Appraisal Agreement and Protocol requires the appraisers to "meet to attempt in good faith to resolve any disputes or differences and to narrow the disputes and differences that must be addressed in the proceedings before the umpire."[6] There is no language that the conferral attempt be made before the invocation of the umpire, particularly when the umpire did not review any information prior to the panel inspection. Further, Defendant also omits a key term of the protocol, that "It shall be for the Panel to decide on the procedures to be used to resolve any item in dispute that the Appraisers present to the Umpire."[7]

The facts show that the panel decided on a joint inspection to meet in good faith to "resolve any disputes or differences and to narrow the disputes and differences that must be addressed in the proceedings before the umpire." And the facts show that Mr. Kessinger was in agreement with the scope of Mr. Irwin's position outside of an obvious number transposition error on the pool estimate.[8] This included that the roofs required replacement, code upgrades, fencing damage, cladding and gutters, and interior damages.[9]

In his deposition, Mr. Kessinger described the joint inspection "for me to better understand Luke's position and for him to point out on a select number of units that we were provided access to the interior and exterior…"[10] and "that's ultimately what I was there for, is to have an honest

---

[6] *Exhibit 18*, Appraisal Agreement and Protocol at p. 4.
[7] *Id*.
[8] *Id*. at P. 144, Line 8 – P. 146, Line 3; *Exhibit 25*, Deposition of Luke Irwin, at P. 70, Line 21 – P. 71, Line 11.
[9] *Id*.
[10] *Exhibit 22-B*, Deposition of Dan Kessinger at p. 47, Lines 14 – 22.

conversation on the conditions and to walk the property."[11] Mr. Kessinger testified he did have that honest conversation and that the meeting was positive.[12] AmGUARD fails to show how this doesn't satisfy the protocol.

If Mr. Kessinger or AmGUARD felt that the manner in which the Panel was proceeding was wrong or improper, they should have raised that concern. To the extent they did not, they have waived the ability to do so now, by failing to raise any issues with the award when specifically asked.[13] The protocol specifically states that "In the event the Panel has questions regarding this Appraisal Protocol, the Panel shall schedule a telephone call with the Parties' legal counsel, Michael Barcus and Laurence D. LeSueur, Jr."[14] But Mr. Kessinger never made any such request, and, AmGUARD's attorney, Laurence D. LeSueur, Jr., was completely on board with how the appraisal process was unfolding, stating "I'm in agreement with Michael, both appraisers have their submissions in at this point and both parties want them to be considered by the umpire to make a decision before our status conference."[15] As the Court can see, AmGUARD's arguments are hollow and have no merit under the facts.

### D. Mr. Moore Properly Considered Mr. Kessinger's Position, Which Included False Statements and Failed to Delineate Damage

Substantial evidence exists showing that Mr. Moore considered Mr. Kessinger's position, in the form of emails, and live testimony, that is discussed ad nauseum in Plaintiff's Motion to Enforce and Plaintiff's Memorandum in Opposition to Defendant's Motion to Vacate. Defendant simply asks this Court to ignore all of it.

---

[11] *Id.* at p. 70, Lines 8 – 20.
[12] *Id.*
[13] *Exhibit 20*, Appraisal Panel Emails, at Umpire Moore 2020 (p. 1 of document), showing Mr. Kessinger was asked to specifically identify any issues to which he admits he never responded. *See Exhibit 22-B*, Deposition of Dan Kessinger at p. 100, Line 6 – 8.
[14] *Exhibit 18*, Appraisal Agreement and Protocol at p. 6.
[15] *Exhibit 35,* Emails dated February 19, 2024 through March 12, 2024.

If anyone acted improper in this Appraisal, it was Mr. Kessinger. AmGUARD claims Mr. Irwin withheld information from Mr. Kessinger, but the facts show Mr. Kessinger is the only one who refused to provide his estimate when asked – to which Defendant has no explanation.[16]

Mr. Kessinger's position claimed it was supported by two "live" bids, but it wasn't supported by any live bids. The only "bid" Mr. Kessinger claims to have obtained that is "live" is one in which the owner of that company has disavowed that bid as being obtained under false pretenses and used to "cheat the appraisal panel."[17]

Mr. Kessinger admitted his estimate failed to distinguish between damages from Hurricane Delta and Hurricane Ida, as required.[18] In an April 11, 2024 letter, AmGUARD stated it was tendering $1,036,242.32 for damages from both Delta and Ida, after deductions"[19] AmGUARD then produced an estimate, purported to be from Mr. Kessinger and Meridian, itemizing Hurricane Ida damages.[20] AmGUARD altered, after the fact, Mr. Kessinger's estimate to include Hurricane Ida damage, further highlighting that even AmGUARD agrees Mr. Kessinger's estimate was unreliable.

When asked if there was anything Mr. Kessinger did that affected his credibility, Mr. Moore stated "I was surprised [Kessinger] did not come with at least a working estimate to review for my benefit."[21]

### E. AmGUARD is Required to Apply Coverage, Not the Umpire

AmGUARD claims the appraisal award should be vacated because the umpire "foists decisions of scope of damage, causation and coverage to the insurance carrier." Aside from the

---

[16] *Exhibit 24*, Deposition of Joel Moore at P. 105, Line 1 - 24
[17] *Exhibit 29* Affidavit of Chris Yancey, ¶ 8.
[18] *Exhibit 22*, Deposition of Dan Kessinger at P. 74, Line 8 – P. 75, Line 4.
[19] *Exhibit 34*, April 11, 2024 Letter.
[20] *Exhibit 40*, Loss Report
[21] *Exhibit 24*, Deposition of Joel Moore at P. 233, Lines 11-15.

fact that AmGUARD has a non-delegable duty to act in good faith to fairly investigate the claim,[22] the appraisal protocol specifically states that "The Panel shall not attempt to resolve any issue of insurance coverage, policy exclusions, compliance with the policy terms and conditions, or any issue concerning the limits of insurance available under the Policy, all of which are reserved for the Parties. Neither the Appraisers nor the Umpire shall have authority to decide questions of law."[23] AmGUARD does not dispute it reserves its right to apply coverage, including application of ordinance and law coverage. But AmGUARD seeks to vacate an award because Mr. Moore did not make a coverage decision. This is absurd.

Of note, Mr. Moore did not sign and was not bound by the appraisal agreement and protocol. AmGUARD claims Mr. Moore violated his duties, but cannot point to any duty he actually violated that he owed.

The heart of AmGUARD's dispute are misrepresented portions of Mr. Moore's deposition testimony to claim that Mr. Moore included items in the award that were not damaged, and therefore, the protocol was not followed. Here is a more accurate depiction of the testimony supporting how Mr. Moore followed the protocol:

| Appraisal Panel Agreement and Protocol | Moore Testimony |
|---|---|
| "If the Appraisers do not agree on as to the amount of the loss…the Umpire will then make a determination as to each item." "The Panel will not consider the costs of correcting any damage, defects or code deficiencies that are not the direct result of the two storms or that are not necessary to repair damage directly caused by Hurricane Delta and Hurricane Ida.[24] | Q: Is there anything else, thinking about this issue now, that Dan agreed to include or that he didn't or any – any other representations that Luke or Dan make at the joint inspection that come to mind now? A: There was, and I think they even alluded to it in the email, the roofs, the fence, some interior damage and an attic and the cladding, cladding and gutters.[25] |

---

[22] La. R.S. § 22:1973.
[23] *Exhibit 18*, Appraisal Agreement and Protocol at p. 5-6.
[24] *Id*. at p. 5.
[25] *Exhibit 24*, Deposition of Joel Moore at p. 145, Line 16 - 23.

| | Q: I want to know, to the best of your memory, what precisely he told you or why you believed [Kessinger] agreed on those items, the decking, the fence, and the cladding.<br><br>A: Because we discussed them.[26] |
|---|---|
| "If the Appraisers do not agree on… whether damage was caused by Hurricane Ida or Hurricane Delta… the Umpire will then make a determination as to each item."[27] | Q: Do you recall taking any dollar amounts from Dan's estimate to include in this award?<br><br>A: When I was provided Dan's estimate, and when I opened it, the first thing I recognized was the format was different than the format that Luke Irwin provided me, which they were supposed to have already agreed on that. I also said that to them so I was not dealing with the same thing. I was looking at a totally different piece that will now bog me down. I will now have to try to understand what Mr. Kessinger wrote versus what Mr. Irwin wrote. So, then I go to the roofs. That's the next thing on the list. No, it's exactly -- that's not right. The tarps were the next thing on the list and there was a significant difference on the tarps between Kessinger and Irwin. Then I go to the roofs. The glaringly obvious thing that was not included the roofs was the decking that we all agree needed to be in there even if it was removed later by the carrier….<br><br>I moved on to the fence, and I immediately saw that he had put a minimal repair on a fence that had far more damage to it than a minimal repair, and those -- those items alone didn't move the needle.[28] |

When viewing the facts in light of upholding the award, as Louisiana law requires, this is not a close call that the Appraisal Agreement and Protocol was followed, and that the award should be enforced.

## II. Even if AmGUARD's Arguments are Taken as True, the End Result is Still Confirmation of the Award

---

[26] *Exhibit 24-B*, Deposition of Joel Moore at p. 149, Lines 18 – 22.
[27] *Exhibit 18*, Appraisal Agreement and Protocol at p. 5.
[28] *Exhibit 24*, Deposition of Joel Moore at p. 144, Line 8 – p. 145, line 2; p. 146, line 15 – 18.

Even if taken as true, failing to confer, failing to consider a position, and providing a document outside the timelines described in the policy/protocol are not valid reasons to overturn an appraisal award. No Louisiana Court has ever held that any of these reasons would result in vacatur. Defendant points to *Branch v. Springfiled Fire & Marine Ins. Co. of Springfield, Mass.,* for the proposition that appraisal provisions are so strictly enforced that any deviation whatsoever from the policy or protocol would require vacatur.[29] But that is not a holding of *Branch*, and cases that have evaluated *Branch* have held that strict construction in that sense would be impractical, because any party resisting the enforcement of an appraisal could simply instruct its appraiser to not follow the policy or protocol.[30] The Court in *Branch* only found a fatal error in the award because the appraisers did not even ascertain the value of the building.[31]

Defendant claims in its most recent filing that Eastern District in St. Charles does allow an award to be vacated if an umpire did not consider an appraiser's position.[32] But again, that is false. The Court only stated that the circumstances ***might*** be different, "if the umpire declined to review one of the appraisers materials altogether."[33] Again, Defendant asks that we completely ignore the emails from Mr. Moore where he advised Mr. Kessinger he was concerned about receiving Mr. Kessinger's position in time to review, where he tells the panel he would spend the day and the weekend reviewing Mr. Kessinger's thumb drive he sent (which AmGUARD doesn't dispute contained Mr. Kessinger's position), and where he informed the panel he had reviewed all information.

---

[29] [Doc. 136] p. 1.
[30] *St. Charles,* 681 F. Supp. 2d at 765.
[31] *Branch v. Springfield Fire & Marine Ins. Co. of Springfield,* 198 La. 720, 726 – 727.
[32] [Doc. 144-2] at p. 7.
[33] *St. Charles,* 681 F. Supp. 2d at 756.

Moreover, this Court in particular has placed great weight on the fact that the dispositive questions in an appraisal are (1) whether the policy/protocol renders an agreement by any two binding on the Parties, and (2) whether there has been an agreement by any two.[34] Both of these are met here, and because the purpose of appraisal is to "obviate the need for the factfinder in a court proceeding to determine the value of the property in question,"[35] the Court is well within its discretion to enforce the award because Court's "should not disrupt an appraisal award simply because reasonable minds could differ as to the amount awarded or the methods employed."[36]

In a case where AmGUARD alleges the appraisers do not agree on anything (ignoring the testimony showing agreements by Mr. Kessinger at the panel meeting) it would be ludicrous to vacate an award because the appraisers did not confer to narrow the differences. Court's do not vacate awards when discussions discussion among the panel "would accomplish nothing."[37]

### III.   Defendant Has Failed to Provide Any Non-Speculative Evidence of Bias

It is important to note that nowhere in AmGUARD's Motion to Vacate does AmGUARD claim that an audit report from the Louisiana Legislative Auditor is proof that Joel Moore is impartial. AmGUARD's entire reference to this in its Response [Doc. 136] is wasted space in its briefing that attempts to mislead and confuse this Court on matters that have nothing to do with this case, and fail to show any bias. Joel Moore has never been the target of any investigation by the Louisiana Legislative Auditor, nor has the Louisiana Legislative Auditor made any conclusive filing that Joel Moore has ever done anything that could be construed as rendering him so biased

---

[34] *Cole v. Garrison Prop. & Cas. Ins.*, 2023 BL 383430, at *5 (M.D. La. Oct. 26, 2023)
[35] *St. Charles,* 681 F. Supp. 2d at 765.
[36] *Id*. at 760.
[37] *Id.* at 755-56 (rejecting insurance company's argument to vacate the appraisal award because the panel did not include the insurance company's appraiser in the final award discussion when the evidence showed the umpire testified he had reviewed all information submitted by both sides, the umpire questioned the credibility of the insurance company's appraiser, and involving the insurance company's appraiser in the final discussion would have accomplished nothing).

as to never be qualified to serve as an umpire. AmGUARD only brings this up because it literally has nothing else to argue. It is desperate. And it is petty, as the Court can see from the previous undignified filings from AmGUARD.

AmGUARD asks this Court to leap to the conclusion of bias based solely off Mr. Moore and Mr. Irwin's fees, even though AmGUARD paid Mr. Moore's fee without question, and Mr. Irwin's fee is backed up by an hourly rate contract. This is an argument akin to *Dawes v. Continental Ins. Co.*, which has been flatly rejected by Louisiana federal courts for over ninety years. In *Dawes*, the plaintiff argued that the appraisal award should be set aside because "the ridiculous figure at which the trucks were appraised constitutes clear proof of fraud."[38] There, the plaintiff thought the amount the panel valued the trucks was so low, the only reasonable conclusion was fraud.[39] This argument was rejected by the Court in refusing to find fraud based solely on the amount.[40]

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Vacate and confirm the appraisal award issued, in accordance with applicable insurance policies and the binding Appraisal Agreement and Protocol entered into by the parties.

Respectfully submitted:

**BARCUS ARENAS, PLLC**

/s/ *Aaron J. Arenas*
/s/ *Michael S. Barcus*
Aaron J. Arenas, *pro hac vice*
Federal ID No. 3293005

---

[38] *Dawes,* 1 F. Supp. at 605.
[39] *Id*. at 605-606.
[40] *Id*.

                Michael S. Barcus
                Louisiana Bar No. 38979
                2200 N Loop W, Suite 108
                Houston, Texas 77018
                Phone: 800-941-1041
                Direct: 832-216-6691
                michael@barcusarenas.law
                aaron@barcusarenas.law

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 14, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants.

                                        /s/ *Aaron J. Arenas*
                                        *Aaron J. Arenas – Pro Hac Vice*